IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, *et al.*,

    Plaintiffs,

v.

ANGELUCCI BROS & SONS, INC.

    Defendant.

Civ. Action No. 05-0240 (RJL)

FILED
SEP 1 1 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### MEMORANDUM OPINION
(September 9, 2006) [#6]

Plaintiffs in this action are fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF"), an "employee benefit plan" and "multiemployer plan" within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(2), (37), and fiduciaries of the International Masonry Institute ("IMI"), also a "multiemployer plan" within the meaning of ERISA. Plaintiffs have brought this action against defendant Angelucci Bros & Sons, Inc., seeking to collect employer contributions owed to the fund by defendant. This matter is now before the Court on plaintiffs' Motion for Entry of Default Judgment ("Motion"). Upon due consideration of the materials before the Court and the entire record herein, plaintiffs' Motion is GRANTED in part and DENIED in part.



## ANALYSIS

Plaintiffs filed the Complaint in this matter on February 1, 2005. Plaintiffs allegedly made multiple unsuccessful attempts to serve defendant personally and thus served the Summons and a copy of the Complaint on the New Jersey State Treasurer as agent of defendant pursuant to N.J. Stat. Ann. § 2A:15-30.1. (Pls.' Mot. at 2.) Defendant never answered or otherwise responded to the Complaint. As a result, the Clerk of the Court entered its default on September 9, 2005. (Dkt. 5.) Plaintiffs have now moved this Court to enter a default judgment against defendant pursuant to Federal Rule of Civil Procedure 55(b)(2).

A court is empowered to enter a default judgment against a defendant who fails to defend its case. *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 275 (D.C. Cir. 1980). Rule 55(b)(2) authorizes the Court to enter a default judgment against the defendant for the amount claimed plus costs. Fed. R. Civ. P. 55(b)(2). While modern courts do not favor default judgments, they are certainly appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Jackson v. Beech*, 636 F.2d 831, 835-36 (D.C. Cir. 1980).

A default judgment establishes the defaulting party's liability for the well-pled allegations of the complaint. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). A default judgment, however, does not automatically establish liability in the amount claimed by the plaintiff. *Shepherd v. Am. Broad. Cos., Inc.*, 862 F. Supp. 486, 491 (D.D.C. 1994),

*vacated on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995). "[U]nless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins*, 180 F. Supp. 2d at 17; *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (noting that the court may conduct a hearing on the issue of damages pursuant to Federal Rule of Civil Procedure 55(b)(2), but it need not do so if there is "a basis for the damages specified in the default judgment").

The first issue before the Court in this case is the amount of damages owed by defendants to plaintiffs. *See Jackson*, 636 F.2d at 835 (noting that a default judgment establishes the defaulting party's liability when the plaintiff presents a prima facie case to which the defendants are "essentially unresponsive"). Plaintiffs seek damages in the amount of $77,076.11. (Pls.' Mot. at 1.) In support of this figure, plaintiffs have submitted affidavits from David Stupar, Executive Director of the IPF and authorized representative of IMI and the Bricklayers and Allied Craftworkers International Union ("BAC"), and from Ira Mitzner, counsel of record for plaintiffs, each setting forth with specificity the calculations used to reach this amount. (*See generally* Mitzner Decl.; Stupar Decl.) The damage figure provided by plaintiffs was based on contributions that defendants failed to submit for work performed pursuant to the collective bargaining agreement, dues checkoff due for work performed in Local 4 & 5 NJ, as well as interest, fees, and costs that the plaintiff is entitled to collect under ERISA. *See* ERISA § 502(g)(2)(A) (delinquent contributions); § 502(g)(2)(B) (interest); § 502(g)(2)(C)(i) (additional interest); § 502(g)(2)(D) (court costs and attorney's fees).

Based upon these affidavits, and the entire record herein, the Court agrees with *most* of the damage calculations submitted by the plaintiffs. Plaintiffs' request for audit costs, however, will not be granted because our Circuit does not grant ERISA plaintiffs the costs of conducting routine audits. *See Bd. of Trs. of the Hotel and Rest. Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 799 (D.C. Cir. 1998).[1] Accordingly, the Court concludes that the following damages should be paid to plaintiffs:

- $44,085.50 for delinquent contributions payable to the IPF and IMI for work performed in Local 4 & 5 NJ;
- $5,771.50 for interest payable on the delinquent contributions due the IPF and IMI, calculated from the due date at the rate of 15 percent per

---

[1] ERISA §§ 502(g)(2)(D) and (E) allow this Court to award fiduciary plaintiffs "costs of the action" and "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. §§ 1132(g)(2)(D) and (E). Some circuits have held that these provisions allow for audit fees to be awarded. *See, e.g., Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1342-43 (9th Cir. 1988). Our Circuit has not unquestionably stated whether ERISA allows or does not allow for audit costs as damages. *See Bd. of Trs. of the Hotel and Restaurant Employees Local 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1480 (D.C. Cir. 1996) (mentioning in the background section only that the plaintiff funds filed suit asking the court to compel the defendant to submit to a follow-up, investigatory audit and pay for its cost "as required by ERISA and the trust agreements"). In *Board of Trustees of the Hotel and Restaurant Employees Local 25 v. JPR, Inc.*, however, our Circuit held that a Default and Payment Clause in the parties' ERISA plan agreement that allowed the Trustees of the fund to collect "'all expenses of collection incurred by the Trustees, including, but not limited to reasonable counsel fees, auditing fees, and court costs,'" did not allow the Trustees to recover for routine audit costs. 136 F.3d 794, 799 (D.C. Cir. 1998). In that case, the Trustees brought suit after a routine audit showed that defendants had underpaid the fund. *Id.* at 797. The court held that because the routine audit in that case was not conducted as part of a collection attempt, plaintiffs could not recover for its cost. *Id.* at 799. "The test is not whether an expenditure is a necessary precondition to collection efforts, but rather the reverse, whether collection efforts prompted the expenditure." *Id.* The court found that certain auditing expenses might constitute "expense of collection" if they were incurred by "detective work . . . motivated by the desire to collect an underpayment, rather than by the need to perform a routine audit . . . " *Id.*

In the present case—as far as this Court can tell—it was a routine audit that illuminated the defendant's underpayments. While plaintiffs here claim that ERISA—rather than the collective bargaining agreement—entitles them to audit costs, our Circuit's decision in *JPR* makes clear that even an agreement that explicitly provides for audit costs in ERISA actions is not sufficient to allow fiduciaries to recover costs associated with conducting routine audits. Because the same ERISA provisions upon which plaintiffs rely were in effect when *JPR* was decided, the Court will extend *JPR* to the present context and deny plaintiffs' request for routine audit expenses.

annum;
- $10,708.00 for liquidated damages and/or additional computation of statutory interest, pursuant to ERISA § 502(g)(2)(C), assessed on above delinquent contributions due the IPF and IMI;
- $2,030.78 for delinquent dues checkoff due the BAC for work performed in Local 4 & 5 NJ;
- $756.35 for interest assessed on delinquent dues checkoff at the rate of 15 percent per annum;
- $150.00 for the U.S. District Court filing fee;
- $351.85 for service of process costs; and
- $2,579.50 for attorney's fees.

The second issue before the Court is the injunctive relief that plaintiffs request. Plaintiffs ask the Court to direct defendant to comply with its obligations to report and contribute all additional money they owe and will owe to the IPF, IMI, and BAC. (Compl. ¶ 3.) Among the powers that Congress delegated to district courts in ERISA actions involving delinquent contributions is not only the power to award the plan, *inter alia*, unpaid contributions, interest on unpaid contributions, liquidated damages, reasonable attorney's fees, and/or litigation costs, *see* 29 U.S.C. § 1132(g)(2)(A)-(D), but the broad discretionary power to award fiduciary plaintiffs "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). Having evaluated the relevant law and examined the declarations and other submissions provided by the plaintiffs in conjunction with their Motion, the Court concludes that plaintiffs' requested relief is in fact appropriate. *See e.g.*, *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 70 (D.D.C. 2002) ("ERISA authorizes the court to provide for other legal or equitable relief as the court deems appropriate."). Thus, pursuant to the discretionary authority granted it under 29 U.S.C.

§ 1132(g)(2)(E), the Court GRANTS this aspect of plaintiffs' requested relief.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the plaintiffs' Motion for Default Judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued herewith.

/s/ Richard J. Leon
RICHARD J. LEON
United States District Judge